

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

**ENTERED**
**07/03/2007**

| | | |
|---|---|---|
| IN RE: | § | |
| GREENHAW ENERGY, INC. | § | CASE NO: 03-30422 |
|     Debtor(s) | § | |
| | § | CHAPTER  7 |
| | § | |
| W STEVE SMITH | § | |
|     Plaintiff(s) | § | |
| | § | |
| VS. | § | ADVERSARY NO. 06-3343 |
| | § | |
| MORRIS R GREENHAW OIL AND GAS, | § | |
| INC, *et al* | § | |
|     Defendant(s) | § | |

## MEMORANDUM OPINION ON MOTIONS FOR
## SUMMARY JUDGMENT (DOCKET #'s 96, 98, & 99)

For the reasons set forth below, the Defendants' motions for summary judgment will be

granted.  A separate order will issue.  This Court has jurisdiction of this proceeding pursuant to

28 U.S.C. § 1334.  This is a core proceeding under 28 U.S.C. § 157.

*Facts*

On January 6, 2003, Greenhaw Energy, Inc. ("Debtor") filed a petition for chapter 11

bankruptcy.  On Schedule D, Debtor listed Morris R. Greenhaw Oil & Gas, Inc. ("Greenhaw Oil

& Gas") as a secured creditor holding a deed of trust on oil and gas interests in Erath, Comanche

and Eastland Counties.

The property subject to the security interest was purchased by Debtor in February 2001

from Greenhaw Oil & Gas for approximately $1.1 million.  In purchasing the properties, Debtor

signed a promissory note secured by two deeds of trust.  One deed of trust covered particular

rights and interests referred to as Desdemona Field.  The other covered a 3/4 interest in a Gas

Plant and certain real property and leaseholds in Eastland County.  Desdemona Field and the 3/4 interest are collectively referred to as "Desdemona."

After Debtor filed bankruptcy, Greenhaw Oil & Gas filed a motion for relief from the stay.  The Court entered an agreed order resolving the lift stay motion on March 17, 2003 (docket no. 48).  The Order stated that Debtor was to pay Greenhaw Oil & Gas $100,000 by May 16, 2003, $25,000 by July 15, 2003, and the remaining balance of the claim by September 15, 2003.[1]  In addition, the Debtor was to pay $3,000 on the twelfth day of each succeeding month beginning April 12, 2003, and continuing until the September 15, 2003, payment was made.  The $3,000 was characterized as adequate protection payments for use of cash collateral.[2]  The agreed order provided if the Debtor failed to timely make any of the payments described in the order, the automatic stay was to lift on the day after the missed payment was due without further order of the Court.

The cash collateral order stated that any notice required to be given under the cash collateral order should be addressed to Debtor at Post Office Box 580337, Houston, Texas 77258 with a copy to Richard Fuqua at 2777 Allen Parkway, Suite 480, Houston, Texas 77019.  Agreed Order Authorizing Use of Cash Collateral ¶ 33.  Neither order provided a valuation method for Desdemona in the event of a default.

---

[1] In order to determine the total amount due in the September 15, 2003 payment, Greenhaw Oil & Gas was to submit the projected amount to Debtor by July 25, 2003.  Debtor was required to submit its projected amount to Greenhaw Oil & Gas by August 4, 2003.  If the amounts differ, Debtor was required to pay the lesser amount submitted on September 15, 2003.  The difference was to be decided in a hearing held no later than September 1, 2003.

[2] The Cash Collateral Order (docket no. 52) provided that Greenhaw Oil & Gas was to be paid $3,000 on or before the twelfth day of each month consistent with the terms of the cash collateral order and the March 17, 2003 agreed stay order.  If the Debtor failed to make any payments, the Debtor was to be considered in default and Greenhaw Oil & Gas was entitled to all remedies available under the March 17 order without further order of Court.  If there was a default under the cash collateral order or the agreed stay order, Greenhaw Oil & Gas' obligations and Debtor's authority to use cash were to terminate and Greenhaw Oil & Gas was immediately entitled to any remedy available under the March 17 order.  If the default was a non-economic default, Debtor was to have fourteen days to cure after being provided notice of the default by Greenhaw Oil & Gas.

After Debtor failed to make the adequate protection payment due on August 12, 2003, Greenhaw Oil & Gas began foreclosure proceedings.   The foreclosure sale occurred on October 7, 2003.   Notice of the sale and a letter stating an amount due of $441,200, were sent to the Debtor at 12700 N. Featherwood, Houston, Texas 77034 ("Featherwood Address").   The Trustee alleges that of the amount due, $205,316 represented attorney's fees and expenses.   At the foreclosure sale, the gas plant was sold first for $175,000.   There was a subsequent sale for the balance of the Desdemona Field for $250,000.   The Trustee alleges the properties were sold for a grossly inadequate price resulting from a conspiracy between Morris Greenhaw, Greenhaw Oil & Gas, Kenneth K. Laughlin, Kenmor Properties, and Tommy Warford[3] (collectively "Defendants").[4]

The Trustee commenced this adversary proceeding on April 14, 2006, alleging, *inter alia*, that Debtor had made the August 12, 2003, adequate protection payment.   An amended complaint was filed by the Trustee on June 15, 2006.

The Trustee's belief that Debtor made the August 2003 payment was incorrect.   On August 28, 2006, the Trustee appeared before the Court and stipulated that the payment was *not* made.   Accordingly, the Court issued an order declaring the same.[5]   The Court then ruled on the Defendants' motions to dismiss.

---

[3]Tommy Warford is the trustee under the two deeds of trust.

[4] The Trustee alleged the following scheme:
> [Greenhaw Oil & Gas] sold one-half of Desdemona Field to Laughlin for about $660,000 and Laughlin conveyed the Desdemona Field to Square One and then Laughlin (also believed to be in conjunction with Greenhaw) sold Square One to Cano Petroleum, Inc. ("Cano") for $4 million cash and 888,888 shares of Cano (then valued at $4 per share and now valued at closer to $10 per share), **all of which was paid by Cano, as directed, to Kenmore, the owners of which were and are Greenhaw and Laughlin, with an additional 4,000 shares to Hornback.**

Amended Complaint ¶ 20.

[5] After stipulating the payment was not made, the Trustee filed his Second Motion for Leave to Amend Complaint. In his Motion, the Trustee sought to revise and add certain cause of actions.  Specifically, the Trustee claimed there

In so ruling, the Court determined that the only surviving causes of actions from the amended complaint were the Trustee's claims for wrongful foreclosure and conspiracy to commit wrongful foreclosure.  The Trustee had asserted these claims under 11 U.S.C. § 544. The Court found that the Trustee was barred from asserting these claims under § 544 due to the limitations period stated in § 546, but that the Trustee had authority under § 541 to maintain these causes of action.  *See* 11 U.S.C. §§ 541(a)(7) and 544(a).

Now pending before the Court are motions for summary judgment filed by Morris R. Greenhaw Oil & Gas and Morris R. Greenhaw (collectively "Greenhaw"), Kenneth K. Laughlin and Kenmor Properties, L.L.C. ("Laughlin"), and Tommy Warford ("Warford").[6]

### Summary Judgment Standard

A party seeking summary judgment may demonstrate: (i) an absence of evidence to support the non-moving party's claims or (ii) the absence of a genuine issue of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006); *Condrey v. SunTrust Bank of Ga.*, 429 F.3d 556, 562 (5th Cir. 2005).  Material facts are those that could affect the outcome of the action or could allow a reasonable fact finder to find in favor of the non-moving party. *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 529 (5th Cir. 2005).

The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.  At all times, a court views the facts in the light most favorable to the non-moving party.  *Rodriguez v. ConAgra Grocery Products, Co.*, 436 F.3d 468, 473 (5th Cir. 2006).  However, to weigh evidence would result in a

---

were additional facts supporting that a waiver of the timeliness of the August 12, 2003, payment occurred.  The Court held a hearing regarding the Trustee's motion on October 17, 2006.  The Court denied the Trustee's motion for leave to amend finding the proposed amendment would add a new cause of action which would ultimately be futile and unduly prejudicial to Defendants.

[6]The motions for summary judgments are substantially the same motion.  The Court will consider the motions together and will refer to the parties collectively as "Defendants".

credibility determination which is not part of the summary judgment analysis.  *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 762 (5th Cir. 2001); *See MAN Roland, Inc. v. Kreitz Motor Express, Inc.*, 438 F.3d 476, 478 (5th Cir. 2006)**.**  A court is not obligated to search the record for the non-moving party's evidence.  *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

If the movant bears the burden of proof, a successful motion must present evidence that would entitle the movant to judgment at trial.  *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003); *Beck v. Tex. State Bd. of Dental Exam'rs*, 204 F.3d 629, 633 (5th Cir. 2000).  Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine issue of material fact.  *Warfield*, 436 F.3d at 557.  The non-moving party has a duty to respond with specific evidence demonstrating a triable issue of fact.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 324 (1986); *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 402 (5th Cir. 2005).  When identifying specific evidence in the record, the non-movant must articulate how that evidence supports its position.  *Johnson v. Deep E. Texas Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 301 (5th Cir. 2004).

*Summary Judgment Motions*

The Defendants assert they are entitled to summary judgment because (1) the Trustee cannot maintain post—petition claims for wrongful foreclosure and conspiracy to commit wrongful foreclosure under § 541; (2) the Defendants fully complied with the statutory requirements for conducting foreclosure sales, therefore no wrongful foreclosure occurred; (3) because wrongful foreclosure did not occur, there can be no conspiracy to commit wrongful foreclosure; and (4) conspiracy claims are otherwise barred by the applicable statute of limitations.

The Trustee maintains that (1) authority exists under § 541to assert these claims; (2) there were irregularities in the foreclosure sale; and (3) the result of the irregularities is that the price at which the properties were sold was grossly inadequate.

*Trustee's Authority Under § 541*

Generally, the estate consists of property which the debtor owns at the time of filing the petition. 5 RESNICK & SOMMER, COLLIER ON BANKRUPTCY  ¶ 541.01. This includes causes of action. *Wieburg v. GTE Southwest Inc.*, 272 F.3d 302, 306 (5th Cir. 2001) (citing *In re Educators Group Health trust*, 25 F.3d 1281, 1283 (5th Cir. 1994)). *See In re Equinox Oil Co.,* 300 F.3d 614, 618 (5th Cir. 2002) ("Section 541 is read broadly and is interpreted to 'include all kinds of property, including tangible or intangible property [and] causes of action…"). Therefore, if claims exist which are property of the estate at the time of filing, the Trustee becomes the "real party in interest with exclusive standing to assert them." *Weiburg*, 272 F.3d at 306 (citing *In re Educator's Group Health trust*, 25 F.3d at 1284).

The estate is an "active legal enterprise" which can "sue or be sued." *In re Haberman*, 112 B.R. 273 (Bankr. W.D. Tex . 1990). Accordingly, causes of action that arise from the administration of the chapter 11 estate are property of the estate. This principle is codified in 11 U.S.C. § 541(a)(7). Section 541(a)(7) states that property of the estate will include "[a]ny interest in property that the estate acquires after the commencement of the case." 11 U.S.C. § 541(a)(7).

At the commencement of this bankruptcy case, the Debtor listed on Schedule D the property over which the wrongful foreclosure dispute arises. This property became property of

the estate the moment the Debtor filed for chapter 11 protection.  Any claims stemming from this property would generally belong to the estate.[7]

However, the Defendants argue that avoidance claims, such as wrongful foreclosure, fall into a special class of actions that may be asserted only under § 549.  Because the time to assert claims under § 549 has expired, the Defendants argue that the Trustee has no recourse for such a claim.[8]

The Court finds a fatal flaw exists in the Defendants' argument.  Section 549 is inapplicable to the Trustee's claim.  Section 549 applies only to transfers occurring after the commencement of the case that . . . "[are] not authorized under this title or by the court."  11 U.S.C. § 549(a).  All parties concede that the order granting relief from the stay negates an assertion that an unauthorized transfer occurred.  The Trustee, therefore, could not otherwise avoid this claim under § 549.  Common law precedent, legislative history, and policy consideration regarding § 549 are irrelevant.  The Defendants do not present any other arguments as to why this claim may not be pursued under § 541(a)(7).  The Court will not limit the estate to fewer remedies than those afforded under state law.  Accordingly, the Court finds summary judgment is not warranted on this issue.

---

[7] This case presents a somewhat unique situation.  While Debtor originally filed under chapter 11, this case was later converted to a case under chapter 7.  The alleged wrongful foreclosure occurred on October 7, 2003, after Debtor filed for chapter 11 protection, but prior to the February 2, 2004, conversion of this case to a case under chapter 7.  However, courts addressing issues arising from similar circumstances find that property interests acquired while operating under chapter 11, but prior to converting to chapter 7, become property of the estate.  *See e.g. In re Lotta Water Land Co.*, 25 B.R. 32, 36 (Bankr. Tex. 1982) (The estate acquired an interest in property that "the debtor acquired after the commencement of the Chapter 11 case and prior to the time that it was converted to one under Chapter 7.").

[8] The Trustee is unable to assert these claims under § 549 because he is barred by the deadline set forth in 11 U.S.C. § 549(d)(1) ("An action or proceeding under this section may not be commenced after the earlier of (1) two years after the date of the transfer sought to be avoided. . .").

*Wrongful Foreclosure under Texas Law*

Under Texas common law, a debtor may recover for wrongful foreclosure if "a 'defect' or 'irregularity' occurs in the foreclosure process which deters third parties from bidding…" *First State Bank v. Keilman*, 851 S.W.2d 914, 921 (Tex. App.—Austin 1993, pet. denied) (citing *Pentad Joint Venture v. First Nat'l Bank*, 797 S.W.2d 92, 96 (Tex. App—Austin 1990, writ denied)). The Bankruptcy Court for the Northern District of Texas, in *In re Keener,* summarized the requirements for a party to succeed on a claim of wrongful foreclosure:

> The Texas Supreme Court has held that, in order for a finding of wrongful foreclosure, "[t]here must be evidence of irregularity, though slight, which irregularity must have caused or contributed to cause the property to be sold for a grossly inadequate price." *American Sav. & Loan Ass'n of Houston v. Musick,* 531 S.W.2d 581, 587 (Tex.1975). The Texas cases that address this issue all require "irregularities in the foreclosure sale" that result in a grossly inadequate price. *Wieler,* 887 S.W.2d at 155. In addition, the party attacking the sale must plead and prove any irregularities that rendered the sale invalid. *See Bonilla v. Roberson,* 918 S.W.2d 17, 22 (Tex.App.—Corpus Christi 1996, no writ). "Evidence showing that a better price would have resulted if the sale was conducted in a different manner is required." *Hunt,* 756 S.W.2d at 764; *Bellah v. First Nat'l Bank of Hereford,* 474 S.W.2d 785, 788 (Tex.Civ.App.—Eastland 1971, writ ref'd n.r.e.).

*In re Keener v. First State Bank of Stratford*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001) (citations omitted). In short, the Plaintiff must show an irregularity in the foreclosure sale as a prerequisite to any recovery for wrongful foreclosure. That irregularity must contribute to an inadequate price.

When it is alleged that the mortgagee caused irregularities in the foreclosure sale, the Court must first consider the mortgagee's duties and determine whether the mortgagee complied with its duties as required by statute or the deed of trust. *First State Bank*, 851 S.W.2d at 921 (citing *Pentad*, 797 S.W.2d at 96). If the mortgagee either "(1) fails to comply with statutory or contractual terms, or (2) complies with such terms, yet takes affirmative action that detrimentally

8

affects the fairness of the foreclosure process," the debtor may be able to recover for wrongful foreclosure. *First State Bank,* 851 S.W.2d at 921.

A sale of real property under a contract lien must be conducted in accordance with the Texas Property Code § 51.002. The Texas Property Code, § 51.002 provides in relevant part:

> (b) Notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:
>
>> (1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;
>>
>> (2) filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and
>>
>> (3) serving written notice of the sale by certified mail on each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt.
>
> …
>
> (e) Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.

TEX. PROP. CODE § 51.002.

The Trustee asserts there were several irregularities which violated statutory and contractual provisions as to the foreclosure sale. The main objections asserted by the Trustee are that the notice regarding the foreclosure sale was inadequate because it failed to list a specific time for which the sale would be held and because it was sent to an incorrect address.

The Trustee also alleges that there were additional irregularities the Court should consider in evaluating the adequacy of the sale. These include: (1) the amount of the debt was overstated and not incompliance with the Stay Order; (2) when the foreclosure occurred, the debtors were under a belief that negotiations were occurring to cure the default; (3) Warford, the

trustee under the deeds of trust, failed to comply with certain duties; and (4) the Defendants failed to comply with the notice and acceleration procedures in the first deed of trust.

### 1. Alleged Irregularity: Time of Sale

The Trustee argues that the notices sent out regarding the foreclosure sale were inadequate because they advertised a "**range** of time" for the foreclosure sale rather than an actual time. Pl.'s Resp. ¶ 27. The Court rejects this argument.

The Texas Property Code states:

(a) A sale of real property under a power of sale conferred by a deed of trust or other contract lien must be a public sale at auction held between 10 a.m. and 4 p.m. of the first Tuesday of a month . . .

(b) Notice of the sale, which must include a statement of the earliest time at which the sale will begin, must be given at least 21 days before the date of the sale by:

. . .

(c) The sale must begin at the time stated in the notice of sale or not later than three hours after that time.

TEX. PROP. CODE § 51.002. The notices sent by Warford state the sales will occur "between the hours of 10:00 o'clock a.m. and 1:00 o'clock p.m." The trustee's deeds state that the sales did, in fact, occur at 10:01 a.m. and 10:03 a.m.

The first deed of trust states Warford may sell such property after "advertising the time, place and terms of the sale." The only further specification is that the deed states "conveyed property may be sold . . . on the first Tuesday in any month between the hours of 10:00 a.m. and 4:00 a.m." The second deed of trust states the property may be sold after "advertising the time, place and terms of the sale. . . as required by section 51.002, Texas Property Code." Sale shall occur "between the hours of ten o'clock A.M. and four o'clock P.M." The Trustee argues that the first deed of trust requires a more specific time than that under the Texas Property Code.

*a. Time of Sale under the Texas Property Code*

Section 51.002(c) of the Texas Property Code provides that notice of the sale must include the time the property will be sold and that the sale must occur not later than three hours after that time. Warford stated that the property would be sold between 10:00 a.m. and 1:00 p.m. Both sales had occurred within three minutes of 10:00 a.m. The time for sale provided in the notices complies with statutory requirements.

*b. Time of Sale under the First Deed of Trust*

The Court also finds that despite Warford's failure to state a specific time of sale, the "range" provided by Warford is sufficient to comply with the requirements in the first deed of trust. The Trustee cites *Harwath v. Hudson*, 654 S.W.2d 851 (Tex. App—Dallas 1983, writ ref'd n.r.e.) for his assertion that a trustee's failure to state a specific time on the notice constitutes a wrongful foreclosure.

In *Harwath*, the deed of trust specifically required notice of the sale to be posted in three public places. *Id.* at 852. When the deed of trust was executed, this was the requirement under the Texas statute governing the sale. *Id.* However, when the property was sold, the statute had changed and notice was required in only one public place. *Id.* The trustee only placed notice in one public place. *Id.* The Court stated that "the right of a grantor of a deed of trust to have its provisions strictly complied with to effect a valid foreclosure sale is absolute [and] [s]ince strict compliance was lacking in this case, the foreclosure sale was invalid." *Id.* at 854.

The Court finds that *Harwath* is distinguishable from the present proceeding. The deed of trust in *Harwath* required a specific number of postings. This deed of trust, however, does not provide a quantifiable, definitive requirement like the one in *Harwath*. The deed of trust in this proceeding states that the trustee shall sell the property "after advertising the time, place and

terms of the sale." There is no statement that the time advertised must be specific as to the minute or hour of the sale. The only limitation as to the time of the sale is that the deed of trust states that the sale shall occur "on the first Tuesday in any month between the hours of 10:00 a.m. and 4:00 p.m." This requirement is directly from the Texas Property Code. TEX. PROP. CODE § 51.002(a).

Generally, "the same rules of interpretation that apply to contracts also apply to deed of trust." *Starcrest Trust v. Berry*, 926 S.W.2d 343, 352 (Tex. App.—Austin 1996, no pet.) (citing *Alkas v. United Savs. Ass'n,* 672 S.W.2d 852, 858 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.)). Basic rules of contract interpretation state that [i]f a contract is subject to two or more reasonable interpretations, the contract is ambiguous, thereby creating a fact issue on the parties' intent." *Material P'ships, Inc. v. Ventura*, 102 S.W.3d 252, 258 (Tex. App.—Houston [14 Dist.] 2003, review denied) (citing *Fein v. R.P.H., Inc.,* 68 S.W.3d 260, 265 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)). However, "[t]he fact the parties provide conflicting interpretations does not create an ambiguity. *Id.* (citing *Fein,* 68 S.W.3d at 265). "For an ambiguity to exist, both interpretations must be reasonable." *Id.* (citing *Lake Charles Harbor & Terminal Dist. v. Bd. of Trustees of the Galveston Wharves,* 62 S.W.3d 237, 243 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). If the contract is not ambiguous, the court is to construe the contract as a matter of law. *Id.* (citing *Fein*, 68 S.W.3d at 265).

The Court finds that the interpretation the Trustee applies to "time" is not reasonable. It would be impossible for a trustee under a deed of trust to predict a definite time and have the foreclosure sale occur precisely at that time. Indeed, the standard in foreclosure sales is to follow the Texas Property Code which expressly allows a three hour window for which sales may occur. TEX. PROP. CODE § 51.002(c).

*2. Irregularity: Address*

The Trustee's second objection is that the notices should have been mailed to both the debtor and the guarantor of the promissory note.  Mr. Charles C. Stout, president of Greenhaw Energy, is listed as the guarantor.  The Court will address notice to each separately.

*a. Adequacy of Notice to Debtor under the Texas Property Code*

The Texas Property Code requires notice to be "addressed to the debtor at the debtor's last known address."  TEX. PROP. CODE § 51.002(e).  Defendants sent notice of the foreclosure sale via certified mail to the Featherwood address of Debtor.  The Trustee maintains that this address had been vacated by Debtor almost a year before the notice of the sale was issued.

The general rule is that the statute is violated when "it is shown that the holder of the debt (1) had in its records the most recent address of the debtor, and (2) failed to mail the notice by certified mail to that address."  *WTFO, Inc. v. Braithwwaite*, 899 S.W.2d 709, 720 (Tex. App.— Dallas 1995, no writ).   The Trustee relies on the Cash Collateral Order entered on April 16, 2003, to argue that the Defendants failed to send notice to the "debtor's last known address." TEX. PROP. CODE § 51.002(e).   The Cash Collateral Order contained a different address for Debtor than the Featherwood address.  Defendants, however, do not argue whether sending notice to the Featherwood address was inadequate to comply with the Texas Property Code. Rather, Defendants assert that even if Featherwood was the wrong address, Debtor received actual, timely notice of the sale.  Actual notice, Defendants assert, is sufficient to comply with the Texas Property Code.

The Fifth Circuit has expressly held that "where the debtor actually timely receives the notice required by section 51.002(b)(3) there is sufficient compliance with that requirement." *Savers Fed. Sav. & Loan Ass'n v. Reetz*, 888 F.2d 1497, 1501 n.6 (5th Cir. 1989) (citing

*Forestier v. San Antonio Savs. Ass'n*, 564 S.W.2d 160, 163 (Tex. Civ. App.—El Paso 1978, writ ref'd n.r.e.) (timely hand delivered notice was found sufficient even though the statute requires certified mail); *Johnson v. First S. Props., Inc.*, 687 S.W.2d 399, 402 (Tex. App.—Houston [14th Dist.] 1985 writ ref'd n.r.e) (incorrect name on notice address did not violate § 51.002 when debtor admitted receiving notice); *Forestier,* 564 S.W.2d at 163 (failure to send individual notice to spouse/co-debtor was immaterial since spouse/co-debtor admitted receiving actual notice).

Here, the certified mail receipt was signed on September 15, 2003, by B. Savell.  The Trustee does not dispute that B. Savell was an officer of Debtor at the time the notices were received.  Pl. Resp. ¶ 14.  As an officer of Debtor, Savell's act of signing the certified mail receipt, in this instance, is deemed a corporate act.  *See. e.g. Powell Indus., Inc. v. Allen*, 985 S.W.2d 455, 457 (Tex. 1998).  Savell was acting for Debtor.  The foreclosure sale was held on October 7, 2003, twenty-two days after Ms. Savell, as an agent for Debtor, received notice.  The Court finds that this actual notice is sufficient to satisfy § 51.002.

### b. Adequacy of Notice to Debtor under the Deeds of Trust

The Court also finds that because the Debtor had actual notice, the adequacy of notice is sufficient to meet the requirements under the first deed of trust.   The Texas Supreme Court has held that actual notice in similar situations is sufficient to comply with various notice requirements under deeds of trust.  *Jasper Fed. Sav.'s & Loan Ass'n v. Reddell*, 730 S.W.2d 672 (Tex. 1987).

In *Jasper*, the Plaintiffs sued for wrongful foreclosure asserting that the notice sent to the Plaintiffs did not inform the Plaintiffs of their right to reinstate after acceleration and the right to bring a certain court action despite such notice being required under the deed of trust.  *Id.*  After the trial court found for the Defendants, the Court of Appeals reversed, finding that strict

compliance with the deed of trust was required.  *Id.*  The Texas Supreme Court reversed the Court of Appeals, relying on *Univ. Sav.'s Assoc. v. Springwoods Shopping Ctr.*, 644 S.W.2d 705 (Tex. 1982), and found that the Plaintiffs had actual notice, and actual notice was sufficient to comply with the requirements of the deed of trust.

The Court in *University Savings* had found that where Plaintiffs had actual notice, there was no effect as to the "'legality or fairness of the trustee's sale' as to the mortgagor" based on the failure to comply with the deed of trust.  *Univ. Sav.'s*, 644 S.W.2d at 706 (quoting *Am. Sav.'s & Loan Ass'n. of Houston v. Musick*, 531 S.W.2 581, 588 (Tex. 1975)).  Accordingly, the Court in *University Savings* upheld a foreclosure sale where there was no compliance with provisions in the deed of trust as to the recording of the appointment of a substitute trustee.  *Univ. Sav.'s*, 644 S.W.2d 705.  In this proceeding, the Debtor's actual notice likewise negates an allegation that Debtor was somehow affected by any alleged failure to comply with the first deed of trust.  Notice as required under the first deed of trust was sufficient.

### c. Adequacy of Notice to Guarantor under the Texas Property Code

The Trustee also argues that the Guarantor of the debt on the deeds of trust, Charles C. Stout, was entitled to receive notice.  Like the notice to Debtor, the notice to Stout was sent to the Featherwood address and signed for by Ms. Savell.  The Trustee asserts that Ms. Savell was not an agent for Stout, and therefore, notice was insufficient.

The Court must address two issues: (1) whether Stout was entitled to notice as a guarantor of the debt; and (2) whether, if Stout was entitled to notice, actual notice occurred and would be sufficient under the Texas Property Code or the deeds of trust.

Under the Texas Property Code, notice is required to be given to "each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt."  TEX.

PROP. CODE § 51.002(b)(3). The first deed of trust provides that notice must be made "on each debtor obligated to pay the indebtedness secured by this deed of trust." The second deed of trust provides that notice must be mailed "as required by section 51.002, Texas Property Code." The term "debtor" is not defined in the Property Code or the deeds of trust.

The Texas Court of Appeals has directly addressed this issue. In *Long v. NCNB—Tex. Nat'l Bank*, 882 S.W.2d 861 (Tex. App.—Corpus Christi 1994, n.w.h.), Long Engineering executed a deed of trust guaranteed by Clarence, Stephen and C.L. Long. *Id.* The engineering company defaulted on the note and filed for bankruptcy. *Id.* After being granted relief from the automatic stay to foreclose on the property, the Defendant sent notice of the foreclosure sale to the engineering company at an address which had been abandoned and to the engineering company's attorney. *Id.* No notice was sent to the guarantors. *Id.*

The Court examined the long legislative history of the Texas Property Code and the statutes within the Property Code which do provide protection for guarantors and found that under Texas Property Code 51.002(b), "guarantors of a note secured by realty do not enjoy the right to notice of the foreclosure sale." *Id.* at 866. The Court stated:

> In 1991 Texas enacted two statutes designed to protect both note makers and guarantors in deficiency suits rising from nonjudicial foreclosures on realty. TEX. PROP. CODE ANN. §§ 51.003, 51.005 (Vernon Supp.1993). Trenchantly, neither statute adopts the language of Section 51.002 that identifies the "debtor" as each person "obliged to pay the debt." Rather, Section 51.003 extends specifically to all "persons against whom recovery of the deficiency is sought." TEX. PROP. CODE ANN. § 51.003(c). Even more pointedly, Section 51.005 expressly inserts the phrase "including guarantors" after referring to "persons obligated on the indebtedness." TEX. PROP. CODE ANN. § 51.005(c). In both statutes, the legislature chose unambiguous language that differs from the phrasing of Section 51.002 when it intended to embrace the guarantor within the scope of the statute's effect.
>
> Finally, the plain wording of Section 51.005 militates against the Longs' interpretation of the notice requirement by limiting the right to contest the foreclosure price with the following language: "The suit must be brought not

16

> later than the 90th day after the date of the foreclosure sale or the date the
> guarantor receives actual notice of the foreclosure sale, whichever is later." TEX.
> PROP. CODE ANN. § 51.005(b). The legislature clearly envisioned the prospect of
> guarantors defending suits for deficiency after they received no notice of the
> foreclosure sale. This notion cannot abide the Longs' contention that notice
> serves as an element of the secured party's cause of action. Rather than construe
> Section 51.002(b) as anathema to Section 51.005(b), we must prefer the
> interpretation that brings the two provisions into harmony. TEX. GOV'T CODE
> ANN. § 311.025.

*Id.*  This Court agrees with the well-reasoned opinion in *Long* and finds that Stout was not

entitled to notice under the Texas Property Code.

### d. Adequacy of Notice to Guarantor under the First Deed of Trust

The Trustee also argues that notice was insufficient as required under the first deed of

trust.  The first deed of trust states that notice must be sent to "each debtor obligated to pay the

indebtedness secured by this deed of trust according to the records of beneficiary . . . ."   It does

not reference the Texas Property Code.  The Trustee asserts that Stout was obligated to pay the

indebtedness, as a guarantor, and, therefore, was entitled to notice.  The Court finds that the

promissory note and deeds of trust do not support such an interpretation of "debtor."

The Court is not, however, entirely unsympathetic to the Trustee's argument.  A

guarantor's agreement to answer for the debt of another is a contingent obligation.  *See Nu-Way*

*Energy Corp v. Delp*, 205 S.W.3d 667, 682 (Tex. App.—Waco 2006, pet. denied) (citing

*Republic Nat'l Bank v. Nw. Nat'l Bank*, 578 S.W.2d 109, 114 (Tex. 1978).   Such obligation is

triggered when the primary obligor has failed to perform.  *Id.* (citing *Republic Nat'l Bank*, 578

S.W.2d at 114).   Therefore, upon failure of a debtor to pay, it could be argued that the

guarantor's obligation is triggered thus causing the guarantor to become a "debtor obligated to

pay the indebtedness," and entitled to notice.  While this logic appears to support the Trustee's

argument, the Court finds that such an interpretation is not in accordance with the intent of the

promissory note and deeds of trust.

The purpose of the Texas Property Code is to "provide a minimum level of protection for the debtor, and [to] provide[] for only constructive notice of the foreclosure." *Onwuteaka v. Cohen*, 846 S.W.2d 889, 892 (Tex. App.—Houston [1 Dist.] 1993, writ denied) (citing *Krueger v. Swann*, 604 S.W.2d 454, 457 (Tex. Civ. App.—Tyler 1980, writ ref'd n.r.e.) (interpreting Tex. Rev. Civ. Stat. Ann. art. 3810, the predecessor to Texas Property Code § 51.002). Because "debtor" is not defined under the first deed of trust, the Court must determine whether the parties intended to afford additional protection greater than the "minimum level" as provided under the Texas Property Code. *See e.g. Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003) (interpreting provisions of insurance policy, "as with any other contract," by reading the contract as a whole).

The first deed of trust generally tracks the language of the Texas Property Code. Where the Texas Property Code states notice is required to be given to "each debtor who, according to the records of the mortgage servicer of the debt, is obligated to pay the debt," the first deed of trust states notice must be made "on each debtor obligated to pay the indebtedness secured by this deed of trust." Tex. Prop. Code § 51.002(b)(3). As stated above, Texas courts have determined that "debtor" under this provision of the Code does not include guarantor. *Long*, 882 S.W.2d at 866.

Because of the very similar language between the first deed of trust and the Texas Property Code and the lack of any language in the first deed of trust suggesting a different intent, the Court finds that the first deed of trust should be interpreted consistently with the Property Code. The first deed of trust does not demonstrate any intent by the parties to provide more than a minimum level of protection to Debtor or the guarantor. Defining "debtor" in the first deed of

trust to include the guarantor is unreasonable.  The Court finds notice was not required to be sent to Stout under the first deed of trust.  Whether actual notice would be sufficient is moot.

*Trustee's Additional Allegations of Irregularities*

In the Trustee's response to the Motions for Summary Judgment, the Trustee asserts the following additional irregularities: (1) no notice of default or acceleration was given as required by the first deed of trust; (2) the amount of alleged debt was overstated and not in compliance with the established procedures of the Stay Order; (3) the Debtor was "lulled" into a belief that foreclosure would not occur based on ongoing negotiations; and (4) the trustee under the deeds of trust breached certain duties owed to Debtor.  While recognizing that "[t]hese matters in and of themselves would normally not be given a second thought," the Trustee asserts that the aggregate affect of these matters supports a finding that irregularities occurred in the foreclosure sale.

The Court finds that as to the first argument, neither the Debtor nor Stout were entitled to notice of acceleration.  The original promissory note signed by Stout, as president of Greenhaw Energy, states:

> On default in the payment of this note or in the performance of any obligation in any instrument securing or collateral to it, the unpaid principal balance and earned interest on this note shall become immediately due at the election of Payee.  Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, and notices of protests.

The Trustee, however, argues that the first deed of trust provided that "upon default, the indebtedness shall, 'at the option of [the] holder . . . , . . . immediately mature and become due and payable'."  Pl's Resp. ¶ 25.  Based on this sentence, the Trustee asserts notice of acceleration was required.  The Court disagrees.  The parties expressly waived the right to notice of

acceleration and notice of intent to accelerate under the promissory note; the deed of trust does not negate this waiver.

As to the Trustee's second and third arguments, that the amount of debt was overstated and not in compliance with the Agreed Stay order and that negotiations were ongoing, the Trustee bases his arguments around the September 15 payment.[9]  The Court finds such arguments lack merit.

The September 15 payment was to be the balance due to Greenhaw Oil & Gas.  Under the Agreed Stay order a detailed procedure was provided for determining this amount and for resolving any related dispute.  However, a condition to reaching this payment was that the Debtor timely made all required adequate protection payments under the Order.  The Agreed Stay order provided that if the Debtor "fails to timely make any of the above—described payments, the automatic stay will be lifted on the day after the missed payment was due without further notice of the Court."  It is undisputed that the Debtor failed to make a payment. Greenhaw Oil & Gas was authorized to foreclose on the property.  The September 15 payment and whether negotiations were ongoing as to that amount is irrelevant.[10]

For the Trustee's fourth argument, the Trustee asserts that the trustee under a deed of trust must act with "impartiality and fairness," "in a businesslike manner", and must conduct the sale "fairly".  Pl's Resp. ¶ 30 (citing *First Fed. Sav.'s & Loan v. Shapr*, 359 S.W.2d 902, 904 (Tex. 1962); *Reisenberg v. Hank*, 258 S.W. 904, 909-10 (Tex. Civ. App.—Amarillo 1924, writ dism'd); *Biddle v. Nat'l Oldline Ins. Co.*, 513 S.W.2d 135, 138 (Tex. Civ. App.—Dallas 1974,

---

[9] *See supra* note 1.

[10] In addition, Texas courts have held that "the fact that negotiations were pending of renewal of an indebtedness at the time of the trustee's sale does not constitute such an irregularity as will warrant a setting aside of a sale under a deed of trust."  *Donaldson v. Mansel*, 615 S.W.2d 799, 802 (Tex. Civ. App.—Houston [1st Dist.] 1981, writ ref'd n.r.e.) (citing *Sparkman v. McWhirter*, 263 S.W.2d 832 (Tex. Civ. App.—Dallas 1954, writ ref'd)).

writ ref'd n.r.e.)).  Additionally, the Trustee argues that "if the mortgagee either fails to comply with the appropriate statute or contractual terms, *or* complies with such terms but 'takes affirmative action that detrimentally affects the fairness of the foreclosure process,' a debtor may recover for wrongful foreclosure."  *Id.* (citing *First State Bank,* 851 S.W.2d at 921.  The Court agrees with the Trustee's assertions as to the behavior of a trustee under a deed of trust.

The Trustee, however, has failed to present any facts to the Court sufficient to overcome the Defendant's summary judgment motion that the trustee under the deeds of trust failed to act with impartiality and fairness.  As established above, the trustee complied with both the Texas Property Code and the requirements within the deeds of trust.  In addition, the Court notes that Texas Court have held that "[t]he relationship of mortgagor and mortgagee ordinarily does not involve a duty of good faith."  *F.D.I.C. v. Coleman*, 795 S.W.2d 706, 709 (Tex. 1990) (citing *English v. Fischer*, 660 S.W.2d 521, 522 (Tex. 1983)).  And that, similarly, "the relationship between a creditor and guarantor does not ordinarily import a duty of good faith."  *Id.* (citing *Rodgers v. Tecumseh bank*, 756 P.2d 1223 (Okla. 1988)).  The Court will not impose a higher duty on the trustee than that currently required by the Property Code and deeds of trust.

Without a showing of an irregularity, the Court is not permitted to review the amount received at the foreclosure sale.  *See BFP v. Resolution Trust Corp.* , 511 U.S. 531, 545 (1994) ("a fair and proper price, or a 'reasonably equivalent value,' for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirement of the State's foreclosure law have been complied with.");  *Am. Sav. & Loan Ass'n of Houston v. Musick,* 531 S.W.2d 581, 587 (Tex.1975). ("[t]here must be evidence of irregularity, though slight, which irregularity must have caused or contributed to cause the property to be sold for a grossly inadequate price.").  The

Trustee has failed to provide any evidence of an irregularity at the foreclosure sale sufficient to overcome the Defendants' motions for summary judgment.

In addition, because the Defendants have shown they are entitled to summary judgment on the Trustee's claim of wrongful foreclosure, the Defendants are also entitled to summary judgment on the claims of conspiracy. *See Abdeljalil v. City of Fort Worth*, 55 F. Supp. 2d 614, 324 (N.D. Tex. 1999) (citing *Meineke Disc. Muffler v. Jaynes*, 999 F.2d 120, 124 (5th Cir. 1993)) (the elements for conspiracy are: "(1) two or more persons; (2) an objective to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful or overt acts; and (5) resulting damages."). No unlawful or overt act has been shown.

Summary judgment will be granted in favor of the Defendants. A separate order will issue.

Signed at Houston, Texas, on July 3, 2007.

MARVIN ISGUR
United States Bankruptcy Judge